**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

United States of America ex rel.
   The Tarbell Group, LLC,

     Plaintiff

       v.

Simbeck, Inc., et al.,

     Defendants

Case no. 5:24-cv-46-EKD-JCH

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

### I.     Introduction

Neither of the two bases advanced by the defendants warrants dismissal.

The first amended complaint ("Complaint") alleges a brazen, $1.6 million fraud perpetrated on the United States, the Treasury, and the American taxpayer, by defendants who twice falsely certified, on the very first question of their applications for government funds, that the applicant was not involved in bankruptcy proceedings, when they knew very well that it was. Every element of the fraud is plainly present and pleaded with particularity.

Nor have Defendants shown a qualifying public disclosure of the alleged fraud to support their "public disclosure bar" defense. They rest this defense on disclosures made in the bankruptcy proceedings of defendant Simbeck, Inc. But those disclosures conspicuously omitted Simbeck's PPP loan application, doubtless in order to conceal the fraud from the court. Nowhere in Simbeck's bankruptcy proceedings, or anywhere else, did Simbeck, or anyone else, disclose the fraudulent misrepresentation on which it relied to receive the funds. Nor did Simbeck cure the fraud through its post-hoc notice, obliquely provided to the government months later in the bankruptcy proceeding, that it had received the loan.

**II.        Legal standards**

The case is brought under the False Claims Act, 31 U.S.C. §§ 3729-3733.

Defendants' motion is brought under Federal Rule of Civil Procedure 12(b)(6). Thus, in considering the motion, the court must accept all factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A motion to dismiss does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). To survive a motion to dismiss, a complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim may not be dismissed if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Fraud, including claims alleging fraud under the False Claims Act ("FCA" or "Act"), must meet the "particularity" requirement of Federal Rule of Civil Procedure 9(b): "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . ." A fraud claim passes muster under Rule 9(b) "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted). To survive a 12(b)(6) motion, a relator under the Act must allege (1) a false statement, (2) made with the requisite scienter, (3) that was material, (4) that caused the government to pay money. *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 188 (4th Cir. 2022). However, fraudulent "intent [and] knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). *See generally United States v. Walgreen Co.*, 711 F. Supp. 3d 601, 609-10 (W.D. Va. 2024).

2

Neither Rule 9(b) nor Rule 12(b)(6) requires a plaintiff to possess or to plead all the evidence needed to prevail at trial. *Cf. Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) (Easterbrook, J.) ("As for Rule 12(b)(6): a requirement that complaints contain all of the evidence needed to prevail at trial, or at least all the facts that would have been required under the pre-1938 system of code pleading, would induce plaintiffs to violate Rule 8(e) ('Each averment of a pleading shall be simple, concise, and direct') by larding their complaints with facts and legal theories. The Rules of Civil Procedure make a complaint just the starting point. Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving—if the claim is unclear, by requiring a more definite statement under Rule 12(e), and if the claim is clear but implausible, by inviting a motion for summary judgment.").

**III.      Argument**

Defendants' memorandum in support of their motion to dismiss (ECF Doc. 24-1, "Defts.' Br.") presents two grounds for dismissal: Rule 9(b)'s heightened pleading standards (Defts.' Br., sec. III, at 6-8), and the public disclosure bar defense, (*id.*, sec. IV, at 9-13). Plaintiff-relator The Tarbell Group, LLC ("Relator") respectfully submits that neither ground affords a legal basis to dismiss the case, and addresses them seriatim below.

**A.      The complaint meets the pleading standards of Rule 9(b)**

The first question on the Paycheck Protection Program ("PPP") application form for government funds asked whether the applicant was presently involved in bankruptcy. An affirmative answer automatically disqualified the applicant from receiving funds.[1] Defendant Simbeck, Inc.

---

[1] To the extent the Court entertains the matter extrinsic to the Complaint presented by defendants, it should also consider the application form itself, attached hereto as Exhibit 1 and excerpted in relevant part here:
*(footnote continues on next page)*

("Simbeck") was involved in bankruptcy proceedings when it applied for, and received, its funds

from the government. Simbeck lied on the application, thereby receiving its two PPP loans: loan

number 1043677404 in the amount of $716,777.00 on May 3, 2020, and loan number 2907178602

in the amount of $871,338.80 on March 16, 2021. It did so by and through and at the behest of its

owner and officers, defendants Michael and Barbara Darnell. The Complaint alleges all of this.

Complaint, ¶¶ 4-6, 9-16. These detailed allegations refute the defendants' contention that they do

not know the circumstances of the alleged fraud. Relator could hardly have been more specific.

As noted above, courts in the Fourth Circuit have tested the Rule 9(b) sufficiency of FCA

claims using a variety of rubrics. The Complaint passes muster under all of them.

Under the *Harrison* formulation, the Complaint must satisfy the court "(1) that the defend-

ant has been made aware of the particular circumstances for which [it] will have to prepare a de-

fense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*,

176 F.3d at 784. With respect to point (1), given the defendants cannot plausibly claim that they

do not know what is at issue here: they falsified their answer to the first question on the applica-

tion—claiming that Simbeck was not involved in bankruptcy, when it was—by virtue of which

they received their PPP loans. With respect to point (2), Relator has provided information speci-

fying the dates and amounts of the loans, the nature of the misrepresentation (falsely answering

the first question on the application), and the individuals who caused the applicant to make the

false misrepresentation.

---

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1.   Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☐ |

While not attached to the Complaint, this application form is at least as "central" and "undisputed" as the extrinsic matter submitted by the defendants. The form at Exhibit 1 was in use at the time of the defendants' first PPP loan application. The form in use at the time of the defendants' second application differed slightly, but contained the same question number 1. Relator previously provided this form to defendants' counsel.

4

The Complaint likewise meets all four criteria under the formulation in *Boyko*, 39 F.4th at 188:

(1) Falsity. Each of paragraphs 14 through 16 allege that each defendant falsely certified that Simbeck was not involved in bankruptcy: "Each defendant . . . falsely certif[ied] that Simbeck was 'not presently involved in any bankruptcy' . . ."

(2) Scienter.  Paragraphs 13 through 16 each allege that each defendant knew that certification to be false. Recall that Rule 9(b) allows scienter to be alleged in conclusory fashion, and even if it did not, Simbeck, its president (defendant Michael J. Darnell, Jr.), and its secretary and treasurer (defendant Barbara K. Darnell) were all surely aware that Simbeck was in bankruptcy.

(3) Materiality. As alleged in paragraph 9, the bankruptcy certification was "a condition for receiving the loan," i.e., that Simbeck would not have received the loans but for the false certification.

(4) Caused the government to pay money. Again, paragraph 9 alleges that the money would not have been paid but for the defendants' misrepresentation. Paragraphs 10 and 11 allege that the money was, in fact, paid.

Defendants argue that the Complaint fails to specify the "who, what, when, where, and how" of the fraud. *Boyko*, 39 F.4th at 189; Defts.' Br., at 7. The "who" are Simbeck, its president Michael J. Darnell, Jr., and its secretary and treasurer Barbara K. Darnell. Complaint, ¶¶ 14-16 ("Each defendant . . . falsely certified . . ."). The "what" is that, based on the misrepresentation that Simbeck was not involved in bankruptcy, it received some $1.6 million in PPP loans. The "when" is the dates on which the loans were approved—May 3, 2020 and May 16, 2021. The misrepresentation could have been made shortly before the dates of such approvals, but the

5

defendants are very well on notice of the time frame in which the fraud occurred. The CARES Act which established the PPP, was enacted on March 27, 2020, Public Law 116-136, and PPP loans opened on April, 3, 2020, one month before Simbeck received its first loan. Applications were typically approved rapidly. Rule 9(b) requires that the pleaded time frame be specific enough to identify the misconduct and permit a defense. It does not demand down-to-the-minute temporal precision. *See, e.g.*, *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cited in Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998). The Complaint provides a window of, at most, one month during which the fraud occurred. It is implausible that this modicum of imprecision could leave defendants confused or ignorant as to when they applied for Simbeck's loan, a fact of which they are well aware.

The "where" is inapplicable to an application that would in all probability have been submitted by electronical mail or other means. It is irrelevant where the defendants were located when they made the misrepresentation. Defendants make much of the Complaint's failure to identify the bank that processed the defendants' loans. Defts.' Br., at 7. Not only is the point of doubtful relevance to the Rule 9(b) particularity analysis, but the defendants hoist themselves by their own petard by incorporating the PPP loan dataset into their brief. Defts.' Br., at 11. The very lines of the dataset that they partially pasted into their brief also identify the banks,[2] discrediting defendants' feigned ignorance as to the details of the fraud at issue. It would offend judicial economy and common sense to reject the Complaint on the basis that the defendants do not know "where" the alleged fraud occurred, only to have it re-filed with the banks named. *Cf. Bennett*, 153 F.3d at 518.

The "how" is by falsely certifying on Simbeck's PPP loan application that Simbeck was not involved in bankruptcy proceedings. Complaint, ¶¶ 14-16.

---

[2] Fountainhead SBF LLC, located in Lake Mary, Florida for the first loan and Quaint Oak Bank of Southam, Pennsylvania for the second.

6

Defendants take the Complaint to task for leaving "wholly undeveloped" the meaning of "presently involved in a bankruptcy." That is a legal issue not required to be addressed in the factual allegations of the Complaint. Regardless, as the defendants themselves concede, the government did not consider an applicant to have emerged from bankruptcy until, at earliest, court approval of a reorganization plan, which for Simbeck did not occur until January 25, 2021, some nine months after receipt of their first loan on May 2, 2020. Defts. Br., at 12-13. Defendants' awareness of the applicable rules again dispels the notion that the Complaint insufficiently apprises the defendants of the fraud claim.

In short, the Complaint measures up to each of the various FCA yardsticks employed by courts in the Fourth Circuit. It contains "enough facts to state a claim to relief that is plausible on its face," and it need not do more. *Twombly*, 550 U.S. at 570. More than a "sheer possibility that a defendant has acted unlawfully," the Complaint alleges that Simbeck would not, could not have obtained the loan, as defendants concede it did, absent the fraud..*Iqbal*, 556 U.S. at 678.

### B.        The "public disclosure bar" defense does not apply

The Act's so-called "public disclosure bar" defense appears in 31 U.S.C. § 3730(e)(4). It establishes an affirmative defense to FCA claims "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in any of three verboten sources: (i) federal criminal, civil, or administrative hearings in which the government is a party, (ii) congressional, GAO, or other federal reports, hearings, audits, or investigations, and (iii) the news media. The defense cannot be raised if opposed by the government, or if the plaintiff is an "original source" of the information, exceptions that Relator does not invoke here.

The defendants have failed to establish that a public disclosure was made, from a disqualifying (or any other) source, of the *sine qua non* of the Complaint, namely fraud—that the

7

defendants knowingly misrepresented on their application that Simbeck was not involved in bank-ruptcy. Accordingly, the defense must fail. *See Boyko*, 39 F.4th at 188-89 (rejecting public disclo-sure bar defense because "[n]othing in the [public disclosures from forbidden sources] touched on . . . alleged fraud.").

The defendants premise their defense on two disclosures: a filing they made in bankruptcy court two months after applying for and receiving their first loan, and a list of PPP loan data made available on the Small Business Administration website. It is far from clear that either disclosure came from a forbidden source as required to support the defense under the Act. But no matter—neither revealed the fraud that undergirds the case, and the defendants do not contend otherwise.

The bankruptcy filing attached to the defendants' brief was filed by Simbeck on July 13, 2020, seeking post-hoc authorization to receive Simbeck's first PPP loan, some two months after it received the funds. ECF Doc. 24-2, pp. 5 et seq. Simbeck claimed to have been unaware that it required court permission to incur the debt. *Id.*, pp. 6-7 (¶ 7). The filing includes, as exhibit A thereto, what Simbeck characterized as the associated "loan documents." *Id.*, at pp. 6 (¶ 6), 10-30. Notably absent from those loan documents is Simbeck's application form, with its answer to ques-tion no. 1, "Is the Applicant . . . presently involved in any bankruptcy?" and its admonition that if the question was answered in the affirmative, the loan would not be approved.[3] Simbeck undoubt-edly realized that, if it included the document, it would expose its fraud. Regardless of motivation, Simbeck omitted the application form from its filing.

The bankruptcy court granted Simbeck's belated motion to incur the loan. ECF Doc. 24-3. It limited its analysis to the provisions of the bankruptcy code and addressed no PPP eligibility criteria. The order gives no indication that the Court, in granting the motion, realized that PPP

---

[3] *See* n.1, *supra*.

8

loans were not available to bankruptcy-involved applicants or considered the application and the defendants' false response to question 1.

In short, the bankruptcy filing is devoid of any mention of fraud.

In support of their public disclosure defense, the defendants next cite the availability of PPP loan data from a government website, www.SBA.org. Plaintiff does not dispute that the website makes available basic data regarding Simbeck's loan—amount, number, lender, date, and so forth. But as with the bankruptcy filing, that data states nothing about Simbeck's fraud.

The case is therefore indistinguishable from *Boyko*, insofar as the public disclosure bar is concerned. *Boyko* involved an FCA relator who endured a medical ordeal and discovered alleged Medicare and Medicaid billing fraud in connection with her treatment. 39 F.4th at 183-87. The *Boyko* defendants asserted the public disclosure defense, based upon a government investigation and report that they claimed publicly disclosed the basis of the relator's claims. The Fourth Circuit upheld the district court's holding that the public disclosure defense did not apply, because the investigation and report "did not involve substantially the same allegations or transactions as [relator]'s present lawsuit." The Fourth Circuit explained: "Nothing in the [report] or investigation touched on billing or alleged fraud. Instead, they focused entirely on asserted deficiencies in medical care. And to the extent that the report discussed medical records, it did so only in reference to delays in generating records or a failure to document medical conditions." 39 F.4th at 189. Likewise, in this case, neither Simbeck's bankruptcy filing, nor the PPP loan data, touch on Simbeck's application fraud.

Thus, even if the bankruptcy filings and PPP loan data qualify as public disclosures from forbidden sources, the defense fails. And it is doubtful that they do so qualify.

9

As to the bankruptcy filing, the defendants contend that it qualifies under the first category, as "a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party." 31 U.S.C. § 3730(e)(4)(A)(i); *see* Defts.' Br., at 10 ("defendants argue the government qualifies as a party to that litigation."). The defendants do not explain why they argue that the government was a party to the bankruptcy proceeding and provide no evidence that it was. They show only that they mailed the motion to the Attorney General and the United States Attorney. Defts.' Br., at 9-10, 14; ECF Doc. 24-2, at p. 3. It is irrelevant whether the motion "put the SBA and lender on notice of Simbeck's debtor-in-possession status." Defts.' Br., at 14. That did not make the government a party to the action (nor did the off-hand, after-the-fact notice of the bankruptcy cleanse the misrepresentation by which Simbeck obtained the loan). They have therefore failed to carry their burden of proof that the bankruptcy proceeding qualifies as a source on which the public disclosure defense can rest.

Less clear is the case of the PPP loan data. The data appears to have been made available in response to a request under the Freedom of Information Act, based on the "PPP FOIA" title of the page on which it is made available. U.S. Small Business Administration, PPP FOIA, *available at* https://data.sba.gov/dataset/ppp-foia (visited Dec. 31, 2025). It is an open question whether raw data provided in response to a FOIA request, without commentary, constitutes a forbidden source under the Act. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 414 (2011) ("This argument assumes that records released under FOIA, but not attached to a written FOIA response, do not fall within the public disclosure bar. We do not decide that question."). Relator respectfully submits that bare FOIA records, without commentary, do not constitute a federal "report," which implies some level of explanation or analysis. But Relator knows of no case so holding. Defendants cite a single, non-binding case, from the Eastern District of California, holding

10

otherwise. *United States ex rel. Relator, LLC v. Kootstra*, No. 1:22-cv-924, 2024 U.S. Dist. LEXIS 139497 (Aug. 6, 2024).

At most, the defendants have shown that the pedestrian facts of Simbeck's receipt of its PPP loans, and the fact of its bankruptcy, were publicly disclosed. Not to belabor the point, but importantly and dispositively, they do not show or even claim to show that the operative claim of the Complaint—fraud—was publicly disclosed from a forbidden source, or any other.[4]

### C.        The second-draw loan

The defendants adduce regulations and a bankruptcy court order approving Simbeck's reorganization plan prior to the issuance of the second-draw loan. They claim that the government ultimately issued regulations to the effect that once a court approved a debtor's reorganization plan, PPP applicants could state that they were no longer "involved in any bankruptcy." Defts.' Br., at 12-13; ECF Doc. 24-4. Even if the defendants are correct, however, they still fraudulently misrepresented Simbeck's eligibility for the second-draw loan. Simbeck was disqualified from the second-draw loan by its failure lawfully to obtain the first-draw loan. Receipt and expenditure of a first-draw loan was a prerequisite for a second-draw loan, 85 Fed. Reg. 3712, 3715, and applicants were required to certify compliance with all eligibility criteria, *see* Exhibit 1, at p. 2. The second PPP loan was therefore as tainted as the first by Simbeck's bankruptcy and misrepresentation of the same. Even if Simbeck had emerged from bankruptcy prior to receiving the second loan, it would not have qualified based by its failure lawfully to receive a first-draw loan and could only have received the loan by fraudulently certifying that it met the criteria therefor.

---

[4] Defendants also do not claim that various other key facts were publicly disclosed. For example, they do not claim that the individual defendants' positions as owner and officers of the company were publicly disclosed from a forbidden source, a critical fact establishing their liability.

11

## IV.     Conclusion

The facts alleged in the Complaint surrounding the defendants' fraud contain the requisite particularity as to the circumstances surrounding the fraud. The defendants have not shown that the fraud alleged in the complaint was publicly disclosed—from a source to which the public disclosure defense applies or otherwise. The motion to dismiss must therefore be denied.

Respectfully submitted,

/s/

Bruce Ellis Fein
Virginia State Bar No. 44049
Bruce Ellis Fein, PLLC
P.O. Box 506
Great Falls, VA 22066
bruce@newdream.net
703-248-0390
*Attorney for Relator*

12

**EXHIBIT 1**

**Paycheck Protection Program**
**Borrower Application Form**

OMB Control No.: 3245-0407
Expiration Date: 09/30/2020

| Check One: | ❏ Sole proprietor  ❏ Partnership  ❏ C-Corp  ❏ S-Corp  ❏ LLC<br>❏ Independent contractor  ❏ Eligible self-employed individual<br>❏ 501(c)(3) nonprofit  ❏ 501(c)(19) veterans organization<br>❏ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ❏ Other | DBA or Tradename if Applicable |
|---|---|---|

| Business Legal Name | | |
|---|---|---|
| | | |

| Business Address | Business TIN (EIN, SSN) | Business Phone |
|---|---|---|
| | | (    )       - |
| | **Primary Contact** | **Email Address** |
| | | |

| Average Monthly Payroll: | $ | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ | Number of Employees: | |
|---|---|---|---|---|---|
| Purpose of the loan (select more than one): | ❏ Payroll  ❏ Lease / Mortgage Interest  ❏ Utilities  ❏ Other (explain):_____ | | | | |

**Applicant Ownership**

List all owners of 20% or more of the equity of the Applicant. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN, SSN) | Address |
|---|---|---|---|---|
| | | | | |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 1. Is the Applicant or any owner of the Applicant presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ❏ | ❏ |
| 2. Has the Applicant, any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ❏ | ❏ |
| 3. Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A. | ❏ | ❏ |
| 4. Has the Applicant received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ❏ | ❏ |

*If questions (5) or (6) are answered "Yes," the loan will not be approved.*

| Question | Yes | No |
|---|---|---|
| 5. Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?<br><br>Initial here to confirm your response to question 5 → _____ | ❏ | ❏ |
| 6. Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)?<br><br>Initial here to confirm your response to question 6 → _____ | ❏ | ❏ |
| 7. Is the United States the principal place of residence for all employees of the Applicant included in the Applicant's payroll calculation above? | ❏ | ❏ |
| 8. Is the Applicant a franchise that is listed in the SBA's Franchise Directory? | ❏ | ❏ |

1

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

CERTIFICATIONS AND AUTHORIZATIONS

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

CERTIFICATIONS

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____  The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____  Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____  The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____  The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____  I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____  During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____  I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than  $1,000,000.

_____  I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____          _____
Signature of Authorized Representative of Applicant                            Date

_____          _____
Print Name                                                                              Title

2

SBA Form 2483 (04/20)

**Paycheck Protection Program**
**Borrower Application Form**

## Purpose of this form:

This form is to be completed by the authorized representative of the Applicant and *submitted to your SBA Participating Lender*. Submission of the requested information is required to make a determination regarding eligibility for financial assistance. Failure to submit the information would affect that determination.

## Instructions for completing this form:

With respect to "purpose of the loan," payroll costs consist of compensation to employees (whose principal place of residence is the United States) in the form of salary, wages, commissions, or similar compensation; cash tips or the equivalent (based on employer records of past tips or, in the absence of such records, a reasonable, good-faith employer estimate of such tips); payment for vacation, parental, family, medical, or sick leave; allowance for separation or dismissal; payment for the provision of employee benefits consisting of group health care coverage, including insurance premiums, and retirement; payment of state and local taxes assessed on compensation of employees; and for an independent contractor or sole proprietor, wage, commissions, income, or net earnings from self-employment or similar compensation.

For purposes of calculating "Average Monthly Payroll," most Applicants will use the average monthly payroll for 2019, excluding costs over $100,000 on an annualized basis for each employee. For seasonal businesses, the Applicant may elect to instead use average monthly payroll for the time period between February 15, 2019 and June 30, 2019, excluding costs over $100,000 on an annualized basis for each employee. For new businesses, average monthly payroll may be calculated using the time period from January 1, 2020 to February 29, 2020, excluding costs over $100,000 on an annualized basis for each employee.

If Applicant is refinancing an Economic Injury Disaster Loan (EIDL): Add the outstanding amount of an EIDL made between January 31, 2020 and April 3, 2020, less the amount of any "advance" under an EIDL COVID-19 loan, to Loan Request as indicated on the form.

All parties listed below are considered owners of the Applicant as defined in 13 CFR § 120.10, as well as "principals":

- For a sole proprietorship, the sole proprietor;

- For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm;

- For a corporation, all owners of 20% or more of the corporation;

- For limited liability companies, all members owning 20% or more of the company; and

- Any Trustor (if the Applicant is owned by a trust).

**Paperwork Reduction Act** – You are not required to respond to this collection of information unless it displays a currently valid OMB Control Number. The estimated time for completing this application, including gathering data needed, is 8 minutes. Comments about this time or the information requested should be sent to : Small Business Administration, Director, Records Management Division, 409 3rd St., SW, Washington DC 20416., and/or SBA Desk Officer, Office of Management and Budget, New Executive Office Building, Washington DC 20503.

**Privacy Act (5 U.S.C. 552a)** – Under the provisions of the Privacy Act, you are not required to provide your social security number. Failure to provide your social security number may not affect any right, benefit or privilege to which you are entitled. (But see Debt Collection Notice regarding taxpayer identification number below.) Disclosures of name and other personal identifiers are required to provide SBA with sufficient information to make a character determination. When evaluating character, SBA considers the person's integrity, candor, and disposition toward criminal actions. Additionally, SBA is specifically authorized to verify your criminal history, or lack thereof, pursuant to section 7(a)(1)(B), 15 USC Section 636(a)(1)(B) of the Small Business Act (the Act).

**Disclosure of Information** – Requests for information about another party may be denied unless SBA has the written permission of the individual to release the information to the requestor or unless the information is subject to disclosure under the Freedom of Information Act. The Privacy Act authorizes SBA to make certain "routine uses" of information protected by that Act. One such routine use is the disclosure of information maintained in SBA's system of records when this information indicates a violation or potential violation of law, whether civil, criminal, or administrative in nature. Specifically, SBA may refer the information to the appropriate agency, whether Federal, State, local or foreign, charged with responsibility for, or otherwise involved in investigation, prosecution, enforcement or prevention of such violations. Another routine use is disclosure to other Federal agencies conducting background checks but only to the extent the information is relevant to the requesting agencies' function. See, 74 F.R. 14890 (2009), and as amended from time to time for additional background and other routine uses. In addition, the CARES Act, requires SBA to register every loan made under the Paycheck Protection Act using the Taxpayer Identification Number (TIN) assigned to the borrower.

**Debt Collection Act of 1982, Deficit Reduction Act of 1984 (31 U.S.C. 3701 et seq. and other titles)** – SBA must obtain your taxpayer identification number when you apply for a loan. If you receive a loan, and do not make payments as they come due, SBA may: (1) report the status of your loan(s) to credit bureaus, (2) hire a collection agency to collect your loan, (3) offset your income tax refund or other amounts due to you from the Federal Government, (4) suspend or debar you or your company from doing business with the Federal Government, (5) refer your loan to the Department of Justice, or (6) foreclose on collateral or take other action permitted in the loan instruments.

**Right to Financial Privacy Act of 1978 (12 U.S.C. 3401)** – The Right to Financial Privacy Act of 1978, grants SBA access rights to financial records held by financial institutions that are or have been doing business with you or your business including any financial

3

SBA Form 2483 (04/20)



**Paycheck Protection Program**
**Borrower Application Form**

institutions participating in a loan or loan guaranty. SBA is only required provide a certificate of its compliance with the Act to a financial institution in connection with its first request for access to your financial records. SBA's access rights continue for the term of any approved loan guaranty agreement. SBA is also authorized to transfer to another Government authority any financial records concerning an approved loan or loan guarantee, as necessary to process, service or foreclose on a loan guaranty or collect on a defaulted loan guaranty.

**Freedom of Information Act (5 U.S.C. 552)** – Subject to certain exceptions, SBA must supply information reflected in agency files and records to a person requesting it. Information about approved loans that will be automatically released includes, among other things, statistics on our loan programs (individual borrowers are not identified in the statistics) and other information such as the names of the borrowers (and their officers, directors, stockholders or partners), the collateral pledged to secure the loan, the amount of the loan, its purpose in general terms and the maturity. Proprietary data on a borrower would not routinely be made available to third parties. All requests under this Act are to be addressed to the nearest SBA office and be identified as a Freedom of Information request.

**Occupational Safety and Health Act (15 U.S.C. 651 et seq.)** – The Occupational Safety and Health Administration (OSHA) can require businesses to modify facilities and procedures to protect employees. Businesses that do not comply may be fined, forced to cease operations, or prevented from starting operations. Signing this form is certification that the applicant, to the best of its knowledge, is in compliance with the applicable OSHA requirements, and will remain in compliance during the life of the loan.

**Civil Rights (13 C.F.R. 112, 113, 117)** – All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations. All borrowers must display the "Equal Employment Opportunity Poster" prescribed by SBA.

**Equal Credit Opportunity Act (15 U.S.C. 1691)** – Creditors are prohibited from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status or age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

**Debarment and Suspension Executive Order 12549; (2 CFR Part 180 and Part 2700)** – By submitting this loan application, you certify that neither the Applicant or any owner of the Applicant have within the past three years been: (a) debarred, suspended, declared ineligible  or voluntarily excluded from participation in a transaction by any Federal Agency; (b) formally proposed for debarment, with a final determination still pending; (c) indicted, convicted, or had a civil judgment rendered against you for any of the offenses listed in the regulations or (d) delinquent on any amounts owed to the U.S. Government or its instrumentalities as of the date of execution of this certification.

4

SBA Form 2483 (04/20)